IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARLENE SPARKS<br>19425 Van Aken Blvd.  #203<br>Shaker Heights, Ohio 44122 | )<br>)<br>)<br>) | CASE NO: |
| Plaintiff, | )<br>) | JUDGE |
| vs. | )<br>) | **COMPLAINT FOR<br>INJUNCTIVE RELIEF AND<br>DAMAGES** |
| UNIVERSITY HOSPITALS HEALTH<br>SYSTEMS, INC.<br>3605 Warrensville Ctr. Rd., MSC 9110<br>Shaker Heights, Ohio 44122 | )<br>)<br>)<br>)<br>) | (Jury Demand Endorsed Herein) |
| -and- | )<br>) | |
| KATHY FOLTZ<br>3999 Richmond Rd.,<br>Beachwood, OH 44122 | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff Marlene Sparks by and through undersigned counsel, as her Complaint against Defendant, states and avers the following:

## PARTIES & VENUE

1. Plaintiff Marlene Sparks ("Sparks") is a resident of the city of Shaker Heights, County of Cuyahoga, State of Ohio.

2. Defendant University Hospitals Health Systems, Inc. ("University Hospital") is an Ohio not-for-profit corporation with its principal place of business located in the County of Cuyahoga at 11100 Euclid Avenue, Cleveland, Ohio 44106.

3. Defendant Kathy Foltz is a resident of the State of Ohio.

4. At all times referenced herein, Foltz was an employee of Defendant University Hospital.



5. At all referenced times herein, Foltz was acting in the course and scope of her employment at University Hospital.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Sparks is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964, § 701 *et seq.*, as amended, 42 U.S.C.A. § 2000e *et seq.*

7. This Court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. § 1367 as Sparks's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. The Equal Employment Opportunity Commission ("EEOC") has issued a Notice of Suit Rights in Agency Case No. 532-2012-01861, as of September 25, 2013 and has closed its file.

10. Sparks has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

11. Sparks began working for University Hospital on or about April 30, 2007.

12. Sparks is African-American.

13. On or about May 9, 2011 Sparks started working in a position at University Hospital's Ahuja Medical Center ("Ahuja").

14. From April 30, 2007 through May 2011 Sparks never received any written corrective actions.

15. During the time period Sparks was employed at Ahuja, Foltz was employed in a supervisory position over Sparks.

16. On at least one occasion, Foltz referred to Sparks as her, "best girl."



17. Foltz only referred to two employees as her "best girls."

18. Foltz only referred to African-American employees as her "best girls."

19. Foltz's use of the phrase "best girls" was motivated by race.

20. In or about August 2011 Sparks complained to University Hospital's Human Resources representative, Vanessa Sowell, about being referred to as Foltz's "best girl."

21. In or about July 2011, Dr. Susan Rapheal asked Sparks if he child's father was in her life.

22. In or about July 2011, Dr. Raphael asked Sparks if her child's father paid child support.

23. At all times referenced herein, Dr. Rapheal was employed in a supervisory position over Sparks.

24. Dr. Rapheal did not ask similarly situated Caucasian employees at University Hospital questions about single fathers or child support.

25. Sparks believed that Dr. Rapheal's questions to Sparks were based on stereotypes about African-American males.

26. Sparks believed that Dr. Rapheal's comments were directed toward her because of her race.

27. In or about August 2011, Sparks complained about the comments made by Dr. Rapheal regarding Sparks' father of her child to Sowell.

28. During Sparks's employment, University Hospital failed to address her complaints regarding racial discrimination and harassment.

29. After Sparks made a complaint about racial discrimination Foltz began to issue corrective actions to Sparks.

30. Foltz issued Sparks two corrective actions on December 19, 2011.

31. On December 19, 2011 Foltz issued Sparks a corrective action with a Date of Event of December 16, 2011 ("December 16, 2011 Action").



32. Foltz issued the December 16, 2011Action in response to Sparks walking off the job during an update on staffing/department coverage needs.

33. Sparks did not walk off the job on December 16, 2011.

34. Sparks did not walk off the job on December 15, 2011.

35. Sparks complained to Foltz that she was having chest pains on three different occasions on December 15, 2011.

36. Sparks informed Foltz that she had to leave to seek immediate medical attention on December 15, 2011 due to chest pains.

37. Sparks collapsed in or around the lobby of Ahuja as a result of her chest pains on December 15, 2011.

38. Sparks received emergency medical treatment for complications due to diabetes, stress and hypertension on December 15, 2011 and December 16, 2011.

39. Foltz issued Sparks a corrective action on December 19, 2011 with a Date of Event of December 19, 2011 ("December 19, 2011 Action").

40. Foltz issued Sparks the December 19, 2011 Action for unscheduled absences including absences on December 15, 2011 and December 16, 2011.

41. Sparks was scheduled for paid time off ("PTO") on December 26, 2011 through January 2, 2012.

42. Sparks received provisional approval for intermittent Family and Medical Leave Act ("FMLA") leave on January 9, 2012.

43. The reason for Sparks FMLA leave was for Sparks's serious health condition.

44. On January 11, 2012 Foltz issued Sparks a corrective action form ("January 11, 2012 Action").



45. Foltz issued Sparks the January 11, 2012 Action in part for patient scheduling errors during the week of December 26, 2011.

46. Sparks was on scheduled PTO for the week of December 26, 2011.

47. On or about January 11, 2012 Foltz informed Sparks that she had been terminated.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C.A § 2000e-2

48. Sparks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

49. Throughout her employment, Sparks was fully competent to perform her essential job duties as Operating Room Scheduler at University Hospital.

50. Defendants treated Sparks differently than similarly situated Caucasian employees.

51. University Hospital failed to investigate Sparks's complaints about race discrimination in the workplace.

52. Defendants' conduct was in violation of 42 U.S.C.A § 2000e-2

53. As a direct and proximate cause of the Defendants wrongful conduct, Sparks has suffered and will continue to suffer damages.

### COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.02(A)

54. Sparks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

55. Throughout her employment, Sparks was fully competent to perform her essential job duties.

56. Defendants treated Sparks differently than other similarly situated employees based on her race.

57. Defendants violated Ohio Revised Code § 4112.02(A) by discriminating against Sparks due to her race.



58. As a direct and proximate cause of Defendants' wrongful conduct, Sparks has suffered and will continue to suffer damages.

## COUNT III: UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C.A § 2000e-3

59. Sparks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

60. Sparks regularly opposed unlawful racial discrimination at University Hospital.

61. As a result of Sparks opposing unlawful race discrimination, Defendants retaliated against her by creating a hostile work environment.

62. University Hospital terminated Sparks based on her opposition to racially discriminatory and disparate treatment she received while working at University Hospital.

63. Defendants' conduct was in violation of 42 U.S.C.A § 2000e-3

64. As a direct and proximate cause of Defendants wrongful conduct, Sparks has suffered and will continue to suffer damages.

## COUNT IV: RETALIATORY DISCHARGE IN VIOLATION OF R.C. § 4112.02

65. Sparks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

66. During her employment, Sparks experienced unlawful discriminatory employment practices.

67. As an example, Sparks was referred to as a "best girl" by her supervisor, Foltz.

68. Similarly situated non-African-American female employees were not referred to as "best girl" by Foltz.

69. Sparks complained about the discriminatory conduct as well as other discrimination she experienced while working at University Hospital.

70. Sparks reported the discriminatory conduct to an internal human resources representative at University Hospital.



71. University Hospital terminated Sparks based on her opposition to racially discriminatory and disparate treatment she received while working at University Hospital.

72. University Hospital violated Ohio R.C. § 4112.02 when it terminated Sparks based on her race and her opposition to racially discriminatory and disparate treatment she received while working at University Hospital.

73. As a direct and proximate cause of Defendants' conduct, Sparks suffered and will continue to suffer damages.

### COUNT V: WRONGFUL TERMINATION BASED ON RACIAL DISCRIMINATION

74. Sparks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

75. On or about January 11, 2012 University Hospital terminated Sparks without just cause.

76. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

77. University Hospital terminated Sparks based on her race.

78. University Hospital violated Ohio R.C. § 4112.02 when it terminated Sparks based on her race.

79. As a direct and proximate cause of Defendants' conduct, Sparks has suffered and will continue to suffer damages.

### COUNT IV: RETALIATORY DISCHARGE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

80. Sparks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

81. University Hospital is a covered employer under the FMLA.

82. During her employment, Sparks suffered from a serious health condition.



83. Sparks elected to use intermittent FMLA leave in order to care for and/or treat her serious health condition.

84. At the time Sparks elected to use her FMLA leave, she was a qualified employee under the FMLA.

85. After Sparks was approved for qualified FMLA leave, University Hospital retaliated against her.

86. After Sparks was approved for qualified FMLA leave, University Hospital retaliated against her by terminating her employment.

87. University Hospital willfully retaliated and discriminated against Sparks in violation of 29 U.S.C. § 2615(a).

88. As a direct and proximate cause of University Hospital's conduct, Sparks suffered and will continue to suffer damages.

89. As a direct and proximate cause of University Hospital's conduct, Sparks is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## COUNT V: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

90. Sparks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

91. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee based on disability or racial discrimination, bias and/or prejudice.

92. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee



because he/she engages in protected activity under Ohio law by opposing discriminatory employment practices.

93. Defendants' termination of Sparks jeopardizes these public policies.

94. Defendants' termination of Sparks was motivated by conduct related to these public policies.

95. Defendants had no overriding business justification for terminating Sparks.

96. As a direct and proximate cause of Defendants' wrongful conduct, Sparks suffered and will continue to suffer damages.

### COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

97. Sparks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

98. Defendants intended to cause Sparks emotional distress, or knew that their acts or omissions would result in serious emotional distress to Sparks.

99. Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

100. As a direct and proximate cause of Defendants' acts and omissions as set forth above, Sparks has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

101. As a direct and proximate cause of Defendants' conduct and the resulting emotional distress, Sparks has suffered and will continue to suffer damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Marlene Sparks respectfully requests that this Honorable Court grant the following relief:

   (a) Issue a permanent injunction:



    (i)      Requiring Defendant to abolish discrimination, harassment, and retaliation.

    (ii)     Requiring allocation of significant funding and trained staff to implement all changes within two years.

    (iii)    Requiring removal or demotion of Foltz and all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees.

    (iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints.

    (v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions.

(b) For an award against each Defendant of compensatory and monetary damages to compensate Sparks for emotional distress, personal injury, property damage and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) For an award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) For an award of reasonable attorney's fees and non-taxable costs for Sparks's claims as allowable under law;

(e) For an order requiring Defendant to cease and desist from any employment practice which discriminates against or harasses employees or others on the basis of race, color, religion, sex, military status, national origin, disability, age, or ancestry, or in retaliation against the person because he or she complained about such discrimination.

(f) For an award of the taxable costs of this action; and



(g) For an award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

_____
Brian D. Spitz (0068816)
**THE SPITZ LAW FIRM, LLC**
4568 Mayfield Road, Suite 102
South Euclid, Ohio 44121
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email: Brian.Spitz@SpitzLawFirm.com

*Attorney For Plaintiff Marlene Sparks*

## JURY DEMAND

Plaintiff Sparks demands a trial by jury by the maximum number of jurors permitted.

_____
Brian D. Spitz (0068816)

